IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:15-CT-3198-BO

**Lilton Williams**,

        Plaintiff,

v.

**Assistant Superintendent McCray**, et. al,

        Defendant.

**Memorandum & Recommendation**

        Defendants James McRae,[1] Layton Oxendine, Sergeant Steve Lowry,[2] Eric J. Powell, and John P. Hunt ("Moving Defendants") ask the court to grant summary judgment in their favor as to all of the claims brought by pro se Plaintiff Lilton Williams. D.E. 35. After reviewing the parties' filings, I conclude that there are genuine issues of material fact that preclude resolving this matter without a trial. Thus, the district court should deny the Moving Defendants' motion.[3]

**I.    Background**

        There appears to be general agreement that the relevant events in this case began when Williams sought to leave a vocational training class for a dental appointment and ended several hours later with Williams battered, bloodied, and in need of medical attention. But that is about all the parties agree on. In light of the drastic disagreement over the facts in this case, I will set out

---

[1] Williams erroneously identified McRae as "McCray."

[2] In his Complaint, Williams erroneously identified Lowry as "Lowery." Also, based on the filings, the court assumes references in the Complaint to "Lt. Lowery" and "Sgt. Lowery" refer to Steve Lowry and Tony Lowry, respectively. *Cf.* Compl. ¶ 24, D.E. 1 (alleging he was beaten in the "receiving holding cell" by "Sgt. Lowery") *with* Lowry Aff. ¶ 9, D.E. 38–4 (stating he "observed staff . . . escort [Williams] to the receiving area" as he "escorted Defendant Hunt to medical to be assessed for his injuries").

[3] The district court referred this matter to the undersigned for the entry of a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1).

each side's contentions separately.

### A. Williams's Version of the Facts[4]

On March 24, 2015, at approximately 1:40 p.m., Williams approached Hunt to ask if he could leave his vocational training class for a dental appointment which was scheduled to begin five minutes later. V. Compl. ¶ 2; Incident Rep. at 4, D.E. 38–8. Hunt, who was on the phone when Williams came to his office, angrily slammed the phone down and approached Williams. V. Compl. ¶ 3. Hunt told Williams that he "runs things down here in this area" and asked Williams to step outside. *Id.* ¶ 6.

As Williams attempted to go outside, Hunt put his finger in Williams's face and told him, "[I]f we weren't here" and stopped in mid-sentence. *Id.* ¶ 7. Williams responded by telling Hunt that he "wouldn't do anything to him" and that Hunt should get his finger out of Williams's face. *Id.* ¶ 8.

Hunt then told Williams to walk to a fence and put his hands behind his back, which Williams did. *Id.* ¶¶ 9, 10. When they reached the fence, Hunt told Williams to put his hands up on the fence, which Williams did. *Id.* ¶¶ 11, 12. After Williams raised his hands, Hunt told him to put his hands behind his back again. *Id.* ¶ 13.

Williams turned around slightly and asked Hunt, "[W]hat kind of game [are you] playing?" *Id.* ¶ 14. Hunt then attempted to punch Williams but missed and fell to the ground. *Id.* ¶ 16. Hunt "jumped up" off the ground and sprayed Williams with mace. *Id.* After blinding Williams with mace, Hunt pulled out his baton, repeatedly struck Williams in the leg with it, and shouted at him to get on the ground. *Id.* ¶ 17.

---

[4] Williams submitted a Verified Complaint and swore under penalty of perjury that the statements in his response to the Motion for Summary Judgment were true. Thus, the court relies on both of these items to establish his version of events.

Once Williams got to the ground, Hunt began pummeling him about the head. *Id.* ¶ 20. The assault caused Williams to lose consciousness. *Id.* ¶ 21. Other inmates told Williams that Hunt continued to beat him even after he lost consciousness. *Id.* ¶ 22. After Hunt's thrashing, Williams was left bleeding with a "serious head laceration" and a concussion. *Id.* ¶ 23.

Other officers eventually arrived at the scene and, instead of getting medical help for Williams, took him to a holding cell, where he was placed face down on his stomach in handcuffs. *Id.* ¶¶ 24–25. Sergeants Oxendine, Ballard, and Lowery showed up at the holding cell and administered yet another beating to Williams. *Id.* ¶ 25. As they punched, kicked, and stomped Williams, they told him, "[Y]ou do not hit one of our officers." *Id.* This beating, which included a kick to the face, resulted in a "serious eye injury . . . ." *Id.* ¶ 26.

While this was all taking place, Sergeant Powell stood by and watched the officers assault Williams. *Id.* ¶ 28. Williams also claims that McCray and Lieutenant Lowery stood by and did nothing to prevent the beatings administered by prison staff. *Id.* ¶ 30.

Williams alleges that McCray, Powell, Oxendine, Bullard, Slater, and both officers Lowery failed to see to it that he received medical care for the injuries he suffered. Officers eventually took Williams to a nearby emergency room for treatment for a "head laceration, bodily deep bruises[,] and a serious eye injury." *Id.* ¶ 28.

Three days after the assault took place, Williams filed a grievance about the events of March 24, 2015. Resp. to Mot. for Summ. J. at 2, D.E. 42. But the Defendants continuously failed to respond to his grievance or otherwise follow the procedure established by the State of North Carolina for processing inmate grievances. V. Compl. § II; Resp. to Mot. for Summ. J. at 2. In fact, prison staff ignored his grievances at every step of the grievance process. Resp. to Mot. for Summ. J. at 10 ("[T]he defendants still disregarded . . . and ignored and refused to comply with the ARP

3

rules governing the grievance procedure of Steps 1, 2 & 3.").

### B. Moving Defendants' Version of the Facts[5]

On March 24, 2015, at approximately 1:20 p.m., Williams told Hunt that he needed to leave a vocational training class for a dental appointment which was scheduled to begin at 1:45. Incident Rep. at 4, D.E. 38–8. Hunt responded that Williams would be able to leave the class five minutes before his appointment. *Id.* When Williams arrived at Hunt's office at 1:40 p.m., he began "yelling and screaming[,] saying, "Come on I told you to [sic] let's go." *Id.* Hunt told Williams to calm down because there were inmates nearby doing classroom work. *Id.*

Hunt escorted Williams out of the vocational building towards an entry gate. *Id.* Williams continued his yelling and screaming as they went. *Id.*

Eventually, Hunt told Williams to place his hands behind his back so that he could be handcuffed. *Id.* After Williams placed his hands behind his back, Hunt reached for Williams's left wrist. Suddenly, Williams "spun around and punched [Hunt] on the right side of his face." *Id.* Hunt stepped back, but Williams approached him with his hands raised and fists clenched "as if he was going to punch him again." *Id.* In response, Hunt pulled out his pepper spray and "sprayed two short bursts" in Williams's face. *Id.* Hunt ordered Williams to get on the ground. *Id.*

Undeterred, Williams clenched and raised his fists and began to approach Hunt once again.

---

[5] In providing the Moving Defendants' version of the facts, the court relies in significant part on the incident report attached as an exhibit to McRae's affidavit. The report contains, among other things, a statement by Hunt (from whom no affidavit exists). The court finds that the information contained in the incident report arguably qualifies as "matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel" or as "factual findings from a legally authorized investigation" and is thus excepted from the hearsay rule. Fed. R. Evid. 803(8)(A)(ii)–(iii); *see Beech Aircraft Corp.* v. *Rainey*, 488 U.S. 153, 170 (1988) (holding Rule 803(8) allows admission of reports that contain facts and "state a conclusion or opinion[] [a]s long as the conclusion is based on a factual investigation and satisfies the Rule's trustworthiness requirement"). Material need not be in an admissible form at summary judgment stage. Rather, a party must identify materials that it can present "in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2); *see Pronin* v. *Vining*, No. 5:13-cv-03423-DCN, 2016 WL 1253182, at *4 (D.S.C. Mar. 31, 2016) (noting "the objection [now] contemplated by the amended Rule is not that the material 'has not' been submitted in admissible form, but that it 'cannot' be") (alteration in original). Hunt's statement can be presented in admissible form via his sworn testimony at trial. Thus the court will rely on the report for now since it may later qualify as an exception to the hearsay rule.

*Id.* As the pepper spray had been ineffective, Hunt pulled out his baton and struck Williams twice on his thigh. *Id.* Although Hunt stepped back, Williams continued to approach him in a fighting stance. *Id.* Hunt swung his baton at Williams's shoulder, but Williams tried to duck out of the way and was struck in the head. *Id.* at 5.

After the blow to the head, Hunt was able to pin Williams to the ground, but he continued to struggle. *Id.* Hunt called for help from his colleagues, who raised an alarm about the disturbance at the vocational building. *Id.* Several officers responded and, together, they subdued Williams. *Id.*

Bullard and Smith took Williams to a holding cell. *Id.* On the way, Williams became "irate, aggressive[,]" and tried to get away. *Id.*; Smith Statement, D.E. 38–8 at 14; Bullard Statement, D.E. 38–8 at 15. The officers pushed Williams against the wall to gain control of him. Incident Rep. at 4. Williams was eventually placed in the holding cell where he was loud, irate, and refused medical treatment. *Id.* Oxendine monitored Williams for an hour while he was in the cell. Incident Report, D.E. 38–8 at 5; Oxendine Aff. ¶ 9, D.E. 38–3 at 3.

At approximately 2:13 p.m., less than 30 minutes after the fracas between Hunt and Williams ensued, Williams received medical treatment. Shylavets Statement, D.E. at 38–8 at 20. The examination uncovered a one inch cut on the left side of Williams's head and a two inch bruise behind his ear. *Id.* The medical staff had Williams taken to the local emergency room for further evaluation. *Id.*

Hunt also received medical treatment for his injuries. Steve Lowry Aff. ¶ 9, D.E. 38–4 at 3. Later in the day he went to the local magistrate office to file charges against Williams. Powell Aff. ¶ 10; D.E. 38–2 at 4.

The North Carolina Inmate Grievance Review Board ("IGRB") is an agency within the North Carolina Department of Public Safety that is responsible for investigating "inmate

grievances pursuant to the procedures established by the Administrative Remedy Procedure [("ARP")]." Couch Aff. ¶ 4, D.E. 38–1 at 1. The State of North Carolina's ARP involves a three-step process, which culminates in a review by the IGRB. *Id.* ¶ 5. The IRGB receives Step Three Grievance Appeals from prison facilities and evaluates them. *Id.* ¶ 6. The IRGB has reviewed its records and it has been unable to locate any "Step 3 Grievance Appeals . . . from former Inmate Lilton Williams . . . related to assault and/or use of force." *Id.* ¶ 6.

C.  **Procedural History**

Williams subsequently filed this action under 42 U.S.C. § 1983 against McRae, Oxendine, Sergeant Lowry, Powell, Hunt, Lieutenant Lowery, and Bullard. After conducting the screening required by the Prison Litigation Reform Act, the court allowed Williams's Complaint to proceed. A review of the order allowing the Complaint to proceed indicates that it contained the following claims:

- Hunt violated Williams's Eighth Amendment rights by using excessive force against him outside of the vocational building.

- Sergeants Oxendine, Bullard, and Lowery violated Williams's Eighth Amendment rights by beating him in a holding cell while he was handcuffed and lying face down, resulting in a serious eye injury.

- McRae, Powell, Oxendine, Bullard, and the officers Lowery violated Williams's Eighth Amendment rights by failing to provide him medical care for his injuries.

- McRae, Powell, and Lieutenant Lowery violated Williams's Eighth Amendment rights by failing to prevent the misuse of force (essentially, a claim of bystander liability).

- McRae violated Williams's Eighth Amendment rights by failing to protect him from excessive force by the Defendants.

D.E. 7.

In November 2016, Defendants Hunt, McRae, Oxendine, Powell, and Sergeant Lowery filed the motion for summary judgment that is currently before the court. D.E. 35. The motion does

6

not specify which claims the Moving Defendants seek summary judgment, but their supporting memorandum only addresses the excessive force claim against Hunt and makes a very cursory suggestion that they are entitled to qualified immunity on an unspecified number of Williams's claims. D.E. 36.

In June 2017, Defendants Bullard and Lieutenant Lowery filed a separate motion for summary judgment. D.E. 57. That motion will not be addressed in this order.

## II. Discussion

The Moving Defendants seek summary judgment on the following grounds: (1) Williams failed to exhaust his administrative remedies; (2) the Moving Defendants did not use in excessive force against Williams; and (3) the Moving Defendants are entitled to qualified immunity because they did not violate a clearly established federal right. Perplexingly, the Moving Defendants do not argue that they are entitled to summary judgment on Williams's Eighth Amendment excessive force and bystander liability claims arising from his alleged beating in the holding cell or the claims for medical deliberate indifference against McRae, Oxendine, Lowry, and Powell.

### A. Standard of Review

Summary judgment is appropriate when an examination of the pleadings, affidavits, and other proper discovery materials before the court demonstrates that "there is no genuine dispute as to any material fact," thus entitling the moving party to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Tolan* v. *Cotton*, 134 S. Ct. 1861, 1866 (2014). In making this determination, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor." *News & Observer Publ'g Co.* v. *Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010) (quoting *Hunt* v. *Cromartie*, 526 U.S. 541, 552 (1999)); *accord Tolan*, 134 S. Ct. at 1866.

7

The movant carries the initial burden of showing that no genuine issue of material fact exists. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 324 (1986). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation. *See Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a factual dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The movant discharges this burden by identifying "an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325. In response, the non-movant must identify specific facts showing there is a genuine issue for trial. *Id.* at 323. In so doing, the non-movant may rely on a verified complaint when allegations therein are based on personal knowledge. *Williams* v. *Griffin*, 952 F.2d 820, 823 (4th Cir. 1991). Conclusory allegations and speculation do not suffice. *Thompson* v. *Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002). If the non-movant fails to introduce evidence contradicting a fact supported by the movant's evidence, the court may "consider the fact undisputed for summary judgment purposes." Fed. R. Civ. P. 56(e)(2). If the non-movant fails to meet his burden, summary judgment must be granted. *Celotex*, 477 U.S. at 322.

### B. Exhaustion of Administrative Remedies

Initially, the Moving Defendants claim that they are entitled to summary judgment because Williams failed to exhaust his administrative remedies. The Prison Litigation Reform Act of 1995 ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . , or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[E]xhaustion is mandatory," and "unexhausted claims cannot be brought in court." *Jones* v. *Bock*, 549 U.S. 199, 211 (2007); *accord Ross* v. *Blake*, 136 S. Ct. 1850, 1856 (2016). In order to properly exhaust his administrative remedies, an inmate must demonstrate "[c]ompliance with [the relevant state prison's] grievance

procedures." *Jones*, 549 U.S. at 218.

In North Carolina, proper exhaustion requires following a three-step administrative remedy procedure ("ARP"). *See* DPS Policy & Proc., Administrative Remedy Proc. Ch. G § .0310; *see also Moore* v. *Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). Failure to exhaust administrative remedies is an affirmative defense that a defendant must generally plead and prove. *See Jones*, 549 U.S. at 216.

Williams admits that he failed to exhaust his administrative remedies regarding the events of March 24, 2015. *See* Pl.'s Resp. at 11, D.E. 42 (stating that he "exhausted his remedies as far as he was allowed to pursue given the circumstances of his situation)"; Couch Aff. ¶ 7, D.E. 38–1 (stating that the Inmate Grievance Resolution Board ("IGRB") received "no Step 3 Grievance Appeals" from Williams "for the period of time beginning 1 March 2015 through the present"). But he claims that his attempts to exhaust his administrative remedies were stymied by the defendants who "intentionally disregarded" his grievances and "refused to comply with the ARP rules governing the grievance procedure of Steps 1, 2 & 3." Pl.'s Resp. at 10–11. Throughout the process, Williams claims, the Defendants "ignored proper procedure [and] protocol" in handling his grievances. *Id.* They even went so far as to ignore a grievance from Williams that was forwarded to them by North Carolina's Director of Prisons. *Id.*

Although he does not expressly state it, Williams is arguing that the administrative remedy process was unavailable to him due to the Defendants' malfeasance and chicanery. As noted above, the PLRA only requires exhaustion of "available" administrative remedies. 28 U.S.C. § 1997e. And while the PLRA does not contain a futility exception, *Booth* v. *Churner*, 532 U.S. 741, 741 n.6 (2001), a court will find that administrative remedies were unavailable if (1) the grievance process "operates as a simple dead end – with officers unable or consistently unwilling to provide

9

any relief to aggrieved inmates"; (2) the grievance process is "so opaque that it becomes, practically speaking, incapable of use" because "no ordinary prisoner can discern or navigate it"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 136 S. Ct. at 1859–60.

Here the evidence indicates that the IGRB never received a "Step 3 Grievance Appeals . . . from former Inmate Lilton Williams . . . related to assault and/or use of force." Couch Aff. ¶ 6. The failure to present his claims to the IGRB (thereby exhausting his administrative remedies) would typically foreclose Williams from pursuing his claims in this court. But Williams contends that prison officials intentionally ignored his grievances at each step of the grievance process. As the IGRB is dependent on prison officials to forward Step 3 Grievance Appeals to it, Couch Aff. ¶ 6, if prison officials ignored Williams's Step 3 Grievance Appeal, it would never have made it to the IGRB for resolution. This level of interference with Williams's attempts to exhaust his administrative remedies would render the grievance process "unavailable." *Ross*, 136 S. Ct. at 1859.

The Moving Defendants did not file a reply brief to address this issue and their submissions provide no additional information or insight into the grievance process in this case. In the absence of an explanation from the Moving Defendants, the court is left with only Williams's sworn assertions regarding the grievance process in this case. In light of the lack of contrary evidence, I must conclude that the actions of prison officials rendered the administrative remedy process unavailable to Williams. Thus, the Moving Defendants are not entitled to summary judgment on the basis that Williams failed to exhaust his administrative remedies.

**C. Eighth Amendment Claims**

Williams claims that the Defendants violated his rights under the Eight Amendment to the

Constitution. The Eighth Amendment, applicable to the States through the Fourteenth Amendment, *Robinson v. California*, 370 U.S. 660, 666 (1962), prohibits the infliction of "cruel and unusual punishments," U.S. Const. amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain," *Whitley v. Albers*, 475 U.S. 312, 319 (1986). To establish an Eighth Amendment claim, an inmate must satisfy both an objective component—that the harm inflicted was sufficiently serious—and a subjective component—that the prison official acted with a sufficiently culpable state of mind. *Williams v. Benjamin*, 77 F. 3d 756, 761 (4th Cir. 1996).

As outlined above, Williams alleges a number of different types of Eighth Amendment violations. But the Moving Defendants' motion only addresses the excessive force claim against Hunt and does so in a rather vague and superficial manner. After discussing cases dealing with excessive force issues, the Moving Defendants provide the following one-paragraph explanation about why they are entitled to summary judgment on Williams's excessive force claims:

> In the present case, Defendant Hunt was faced with a violent inmate with evidence of a recent history of assaultive behavior and disobeying orders. Plaintiff was known as an inmate with a history of combative and assaultive behavior towards correctional officers. He was yelling threats at the officers and was refusing to follow orders. The incident was investigated and the Plaintiff was disciplined being found guilty of two infractions and being found guilty in Robeson County of a misdemeanor offense. No reasonable jury would believe that Defendants used excessive force in this case based on the record here. Summary judgment in favor of Defendants is, therefore, appropriate.

D.E. 36 at 22. There is no discussion of the merits of any of the other claims Williams brought against the Moving Defendants. Thus, the court will limit its analysis to whether Hunt is entitled to summary judgment on Williams's excessive force claim.

### 1. Excessive force claim against Hunt

Williams claims that Hunt violated his rights by using excessive force against him during the melee outside the vocational building. To succeed on an excessive force claim, a plaintiff must

show that the prison official (1) used "nontrivial" force (objective component), *Wilkins* v. *Gaddy*, 559 U.S. 34, 39 (2010), and (2) acted with "wantonness in the infliction of pain" (subjective component), *Whitley*, 475 U.S. at 322.

In the prison context, analysis of the subjective component "ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (quotation and citation omitted). This analysis requires consideration of several factors, including: (1) the need for the use of force, (2) the relationship between that need and the amount of force used, (3) the extent of injury inflicted, (4) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them," and (5) "any efforts made to temper the severity of a forceful response." *Whitley*, 475 U.S. at 321.

The Moving Defendants do not contest whether the objective factor was satisfied in this case. And they shouldn't. Viewing the evidence in a light most favorable to Williams, Hunt maced Williams and then struck him with a baton in the legs and head, rendering him unconscious and giving him a concussion along with a one-inch laceration and a two-inch bruise. The level of force allegedly used and the resulting injuries easily rise above the level of a non-trivial use of force. *See Young* v. *Cty. of Los Angeles*, 655 F.3d 1156, 1161 (9th Cir. 2011) ("Both pepper spray and baton blows are forms of force capable of inflicting significant pain and causing serious injury.").

With respect to the claims against Hunt, the real dispute is over whether the application of force was appropriate given the circumstances. But on that issue, there are numerous issues of material fact that would preclude granting summary judgment for the Moving Defendants.

The incident report indicates that Hunt initially used force because Williams punched him in the face. Hunt claims that he used pepper spray and his baton in response to Williams's

12

continued aggressive behavior after this initial punch. Under Hunt's version of events, the force applied seems eminently reasonable.

But under Williams's version of events, he was the victim of a vicious, unprovoked attack by a prison guard. Despite Williams being stunned by an initial punch and blinded by mace, Hunt battered his legs and head with a baton. And the beating continued even once Hunt's attack knocked Williams unconscious.

The evidence in this case presents two irreconcilable versions of the events of March 24, 2015. A reasonably jury could easily side with Williams on this claim if they choose to believe his testimony (and the same goes for Hunt). In light of the genuine dispute over material facts related to Williams's excessive force claim against Hunt, the district court should deny the moving defendants motion regarding this claim.

### 2. Remaining Eighth Amendment Claims

Williams also brings a number of other Eighth Amendment claims. Initially, he alleges that Sergeants Oxendine, Ballard, and Lowery assaulted him while he was handcuffed and lying face down in a cell. Next, he claims that McRae, Powell, Oxendine, Bullard, and the officers Lowery failed to provide him with medical care for his injuries in a timely manner. Finally, he claims that McRae, Powell, and Lieutenant Lowery failed to intervene when they were aware that other staff members were using excessive force against him. The Moving Defendants do not address these claims at all in their motion or supporting affidavits, so they are not entitled to summary judgment on these claims. Even if they did, Williams's sworn filings create genuine issues of material fact that preclude summary judgment in their favor. Thus, the district court should deny the Moving Defendants' Motion for Summary Judgment.

### D. Qualified Immunity

The Moving Defendants also argue, in the most cursory of ways, that they are entitled to qualified immunity from Williams's claims for monetary damages. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow* v. *Fitzgerald*, 457 U.S. 800, 818 (1982). In other words, a government official is entitled to qualified immunity when (1) the plaintiff has not shown a violation of a constitutional right, or (2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct. *Pearson* v. *Callahan*, 555 U.S. 223, 236 (2009).

Here, the Moving Defendants do nothing more than lay out the standard for qualified immunity. They make absolutely no attempt to apply it to explain why they are entitled to qualified immunity under the facts of this case, let alone why they are entitled to qualified immunity under the facts when taken in the light most favorable to Williams. But it is unlikely that a more fulsome discussion of the qualified immunity issue would result in a decision in the Moving Defendants' favor because this case presents numerous genuine issues of material fact about the events of March 24, 2015. A defendant can receive the protections of qualified immunity only in circumstances where there is no dispute over the nature of the acts the defendant allegedly committed. *See Mitchell* v. *Forsyth*, 472 U.S. 511, 526 (1985); *Cloaninger ex rel. Estate of Cloaninger* v. *McDevitt*, 555 F.3d 324, 331 (4th Cir. 2009). Thus, the Moving Defendants are not entitled to summary judgment on the basis of qualified immunity, and their motion should be denied.

### III. Conclusion

Based upon the foregoing, the District Court should deny the Moving Defendants' motion

for summary judgment. D.E. 35.

Furthermore, the court directs that the Clerk of Court serve a copy of this Memorandum and Recommendation on each of the parties or, if represented, their counsel. Each party shall have until 14 days after service of the Memorandum and Recommendation on the party to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a *de novo* determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright* v. *Collins*, **766 F.2d 841, 846–47 (4th Cir. 1985).**

Dated: August 11, 2017

_____
Robert T. Numbers, II
United States Magistrate Judge